## Case No. 4,126.

### In re DUMAHAUT et al.

[19 N. B. R. 394.] [1]

District Court, S. D. New York. Jan. 11, 1879.

BANKRUPTCY—PREVIOUS VOLUNTARY ASSIGNMENT — SUIT BY CREDITOR FOR ACCOUNTING — FEES AND EXPENSES.

A composition was accepted and confirmed, which provided that the assets, which had within three months before the bankruptcy been assigned for the benefit of creditors, should remain in the hands of the voluntary assignee and be distributed by him. Previous to the confirmation, petitioner had commenced a suit against the assignee in a state court for an accounting and distribution of the assigned property. This suit being continued and large expenses incurred, an amendment to the composition was accepted, by which the assigned property was to be delivered to the assignee in bankruptcy and distributed by him. This amendment was confirmed on condition of payment to petitioner of such sum toward reimbursement of his expenses in said suit as the court should award to be proper. It appeared that at the commencement of said suit the voluntary assignee was ready to pay a dividend but was stopped by injunction, and that petitioner reduced the assignee's claims, but had incurred large expenses for receiver's and referee's fees, and also claimed five hundred and fifty dollars as an extra allowance which it was alleged he would have been entitled to if a decree had been entered in that suit. *Held*, that, it not appearing that the assignee's claims could have been adjusted without suit, the suit was not beneficial to the creditors; that under the provisions of the original resolution the petitioner had no absolute right to have the property remain in the hands of the voluntary assignee; that no right to the cost and expenses of the suit had become vested in the petitioner; that it therefore had no interest which was secured to it under section 17 of the bankrupt act [14 Stat. 517], and was not entitled to reimbursement for the expenses and costs of said suit.

[In bankruptcy. In the matter of Edward G. Dumahaut and George Spicer.]

Wilson G. Powell, for Bull's Head Bank.
W. B. Hornblower, contra.

CHOATE, District Judge. In this case a composition was accepted and confirmed by the terms of which the assets of the firm, which, within three months before the bankruptcy, had been assigned by the debtors to a voluntary assignee for the benefit of creditors, were to remain in his possession and be distributed under that assignment and the dividends so made were to be accounted as part of the agreed composition payments after the acceptance of this composition; but before its confirmation the Bull's Head Bank, a creditor, commenced a suit against the assignee, in the supreme court of the state of New York, to compel an accounting by him and a distribution of the assigned property according to the terms of the assignment. In this suit a receiver was appointed who has, however, never taken possession of the property nor been able to do so, partly in consequence of an injunction from this court and partly from the absence of the assignee

[1] [Reprinted by permission.]

from the state. The suit having gone to a reference, and various expenses having been incurred by the plaintiff for costs and disbursements in the cause, and for counsel fees and referee's fees, and the receiver being, or claiming to be, entitled to fees and for charges for counsel, it was found principally on account of the delay caused by the pendency of that suit and the adverse claims of the receiver appointed therein to carry into effect the composition according to its terms, an amendment thereof was proposed and submitted to the creditors, who approved of the same. The amendment consisted in altering the terms of the composition so that the assigned property should not remain in the possession of the voluntary assignee, but should come into the possession of the assignee in bankruptcy and be administered by him. The court confirmed this amendment, adding to the usual order for recording the resolution the following words: "Upon the condition precedent to the taking effect thereof that the bankrupt and the creditors who have signed the said resolution of amendment shall pay to the Bull's Head Bank such sum toward reimbursement of their expenses in and about the action brought by it in the supreme court of the state of New York against the voluntary assignee as this court shall award to be proper." Such sum to be ascertained by a reference to the register to whom it was by the same order referred, "to take testimony and to report to this court as to what sum, if any, shall be paid to said bank as aforesaid."

The Bull's Head bank had objected to this amendment, and the condition inserted in the order of confirmation was doubtless designed to protect and provide for any right which the bank might have to the reimbursement of such expenses under the seventeenth section of the act of June 22, 1874 [18 Stat. 183], which provides that a composition may be varied by a new resolution of the creditors, but "without prejudice to any person taking interest under such provisions" (i. e. the provisions of the original composition) "who do not assent to such addition or variation." But it is evident from the very terms of the order of confirmation that the question whether the bank was entitled to the reimbursement of these expenses was not and was not intended to be passed upon by the court, but was reserved until after the testimony was taken and the report of the register was made. From this order, confirming the resolution varying the composition, the bank appealed to the circuit court by petition of review, and the order was affirmed. See opinion of Waite, C. J. [Case No. 4,124]. Before that appeal was taken the bank applied to this court to be permitted to apply to the state court to have the fees of the receiver determined by that court. The application was denied on the ground that if any such expenses could be allowed

they should be passed on in the same manner in which the other expenses of the bank in that suit were to be determined. In re Dumahaut [Case No. 4,125]. The register has now made his report, by which and by the testimony taken it appears that the bank has paid out in cash disbursements in that suit seventy-four dollars; that it is liable to the referee for his fees, which he claims to be five hundred dollars; that the receiver claims for his services three hundred and fifty dollars, and for his counsel fees one hundred and fifty dollars; and the taxable costs the plaintiff would be entitled to if a final decree in his favor in the suit were entered would be one hundred and thirty dollars, independently of the foregoing, and it is claimed also that upon such decree the court would award to the plaintiff as an allowance and addition to its costs five hundred and fifty dollars.

No claim seems to have been made by the bank for its counsel fees in the suit beyond said sum of five hundred and fifty dollars. Mr. Register Dwight has reported that the bank is not entitled to be paid any part of these sums, on the ground that the charges, disbursements, and services, for which the bank claims reimbursement, were not beneficial to the creditors but the contrary. And the question now is, whether the report of the register shall be confirmed.

There are two questions to be determined: First, whether the suit brought by the bank nominally for itself and all the creditors was in fact beneficial to them, and secondly, whether, if that suit has not been beneficial to the creditors, the rights of the bank to have its expenses in the end reimbursed is preserved to it, whether it is one of those interests under the provisions of the original composition which are expressly protected by the statute allowing a variation of a composition. If the expenses incurred have been positively beneficial to the estate, then, upon the equitable principle that has been so often applied in the case of expenses incurred by a voluntary assignee, there would seem to be a just and equitable claim for reimbursement. On this question I entirely concur in the conclusion of the register. I think the evidence shows clearly that the suit, instead of being a benefit has been a serious injury to the other creditors and to the estate of the bankrupt. Pending the confirmation of a composition, which the requisite majority of the creditors had assented to, and so far as appears without consultation with any other creditor, the bank commenced proceedings for having the assigned property wound up and distributed in a suit in equity in the supreme court of the state, in its nature a tedious and expensive process. There is nothing to show that such proceedings were necessary. The assignee had given bond which had been approved as sufficient. His delay in distributing what had been turned into money up to that time had been occasioned by the

pendency of the bankruptcy proceedings, but the testimony shows that he was ready and willing to distribute it as soon as the uncertainty about the composition should be determined. Without drawing in question as regards this point the right of the bank as a cestui que trust under the deed of assignment to institute and carry on such suit, he must establish before he can be reimbursed his expenses in this court out of the bankrupt's estate, on the ground that his proceedings were taken for the benefit of the estate, that there was some good reason to believe, in the circumstances existing at the time the suit was commenced, that without such proceedings the assignee would not have gone on and voluntarily have done in the discharge of his trust what the creditor bringing the suit has sought to compel him to do by the suit, that is, to convert the property into money and distribute it among the creditors. This the bank has wholly failed to show; on the contrary, it appears that checks were drawn for the payment by the assignees to the creditors of ten per cent. of their debts, the amount then in his hands in money, which payment was stopped by an injunction in said suit. It is claimed, however, that the bank has by its porceedings in the suit reduced the assignee's claim for disbursement six hundred dollars, and for commission four hundred and ninety-four dollars and eighty-five cents, and he has also had the accounts adjusted and settled, and that this is a sufficient benefit to the whole body of the creditors to entitle the bank to reimbursement. But it does not appear that there was any such dispute about any of these matters, or any such reason to apprehend serious disagreement, as to render a long and expensive lawsuit necessary for their determination, or that all these matters could not have been easily adjusted without any suit. After the composition was accepted and confirmed, the bank still went on with the suit and virtually made it impossible to carry into effect the terms of that composition, and the suit has only caused delay and embarrassment to the creditors.

The composition, as originally adopted, provided that the voluntary assignee should hold and distribute the assigned property. It was not within the contemplation of this provision that the assigned estate should be wound up and distributed at the end of a protracted suit in equity, but voluntarily by the assignee and without any unnecessary expense or delay. The inserting this provision in the composition resolutions, therefore, while it amounted to an affirmance of the voluntary assignment by the creditors to the extent that it was to stand, and so long as the composition was not varied it prevented the bankrupt assignee from attacking the assignment and having it set aside as void under the bankrupt law, it did not, as seems to be supposed by the bank, make all the proceedings of the bank taken afterward in harmony with the terms of the composition, or any the less an obstruction to that composition being carried into effect, for no such proceedings by delegation were contemplated by the creditors. Nor did the fact that the creditors generally appeared before the assignee and proved their claims amount to an approval of the bank's proceedings. They must prove, or run the risk of losing their share of the assigned estate.

The finding of the register, therefore, that the services and charges for which reimbursement is sought were not beneficial but injurious to the creditors, must be approved. To hold otherwise would be to encourage unnecessary litigation.

As to the other question, whether the reimbursement of these expenses is secured to the bank by the statute which provides for an amendment of a composition without prejudice to any person taking interest under the original composition, the decision of the chief justice is conclusive that under this provision of the statute the original composition gave the bank no absolute right to have the assigned estate remain in the possession of the voluntary assignee; that such a provision in a composition regulating the mere modes of administering the property of the person by whom it is to be administered is not such an interest as is saved by the statute. It cannot, therefore, be said that the bank went on after the confirmation of the original composition relying on this arrangement as a thing secured to it of right, and if in fact the bank was induced by the circumstance that this arrangement had been made to believe that it might safely go on and incur these expenses it was because it overlooked the fact that the creditors might at any time vary this provision and direct the administration of the property by the bankrupt assignee. The bank has in this only itself to blame for its want of foresight; its misfortune is not entitled to any consideration, since its own persistent obstruction of the carrying out of the creditors' first plan has led to such a change in the terms of the composition as will now render it impossible for the bank to pursue its suit to a final decree so as to recover its costs in the state court.

Nor is there any accrued right of the bank in these costs and expenses which had become vested in the bank before the change in the composition was made. The right to costs in an equity suit is wholly in the discretion of the court, and does not become a vested right till the court by decree or order awards them, and although it might confidently be expected, according to the known practice of the state court in like cases, that the bank would in the end recover these expenses or the greater part of them, yet no such right has yet accrued. The claim for reimbursement of these expenses and costs cannot, therefore, in any sense be regarded as an interest acquired by the bank under

the original composition which is saved to it by the statute. This question was not before the chief justice, and the allusion to the matter in his opinion, which is relied upon by the learned counsel for the bank, means only, as I understand it, that if the bank has any right to be reimbursed, that right is sufficiently secured by the reference ordered by this court to determine that question.

As to the costs of this reference, the claim of the bank being entirely groundless, I think it should be charged with those costs. Report confirmed and the costs of reference charged against any payment coming due to the bank under the composition.